IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| In re | ) | CHAPTER 11 |
|  | ) |  |
| **BEEHIVE BEAUTY SCHOOL, LLC**, | ) | CASE NO. 15-56423-bem |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DEBTOR'S PLAN OF REORGANIZATION

Evan M. Altman, Esq.,
Georgia Bar No., 014066
Northridge 400
8325 Dunwoody Place
Building Two
Atlanta, GA 30350
770-394-6466

Attorney for Debtor

1

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN**

**Error! Unknown document property name.**

# PLAN OF REORGANIZATION

## ARTICLE I

### INTRODUCTION

Beehive Beauty School, LLC, debtor and debtor-in-possession (the "Debtor") herein, files the following Plan of Reorganization (the "Plan"). This Plan should be considered in conjunction with the Disclosure Statement (the "Disclosure Statement"), which the Debtor has filed contemporaneously herewith.

## ARTICLE II

### DEFINITIONS AND RULES OF INTERPRETATION

1.      Scope of Definitions and Rules of Interpretation.

For purposes of the Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article II of the Plan or in the Disclosure Statement. Any term used in the Plan that is not defined herein, but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, and

exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(c) shall apply.  The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules.

2.   Definitions.

2.1     *Administrative Claim* shall mean an Allowed Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to § 507(a)(1) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under §§ 330(a) or 331 of the Bankruptcy Code, (c) the post-Effective Date costs and expenses of administering the Estate,  (d) United States Trustee's quarterly fees to the extent not paid during the case, and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.2     *Allowed,* when used with respect to any Claim or Interest, shall mean a Claim against or an Interest in the Debtor to the extent that any such Claim is unpaid and any such Claim or Interest (a) has been allowed by a Final Order of the Court; (b) is (i) listed in the Debtor's Schedules, other than a Claim or Interest that is Scheduled at zero or unknown amount or as disputed, contingent, or

unliquidated, or (ii) evidenced by a proof of claim or proof of interest that has been filed with the Court on or before the Bar Date or deemed filed pursuant to any Final Order of the Court or under applicable law, and as to which (A) no objection to its allowance has been timely filed, or (B) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; or (c) is allowed pursuant to the terms of this Plan.  Notwithstanding any other provision of the Plan, the term "Allowed Claim" shall not include any Claim held by a creditor against which the Debtor has asserted a Cause of Action that has the effect of precluding a Distribution with respect to such Claim. An Allowed Claim shall not include any interest accrued after the Petition Date (on any Claim other than a Secured Claim) or any penalty.

2.3     *Assets* shall mean all property of the Debtor and the Estate as defined in § 541 of the Bankruptcy Code, including without limitation, all right, title, and interest in and to any Avoidance Actions or other Causes of Action that the Debtor or the Estate may have as of the Effective Date or any time thereafter.

2.4     *Avoidance Actions* shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of the Debtor or its Estate under the Bankruptcy Code, including all claims, rights and causes of action arising under § 510 or under any of §§ 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date

2.5     *Ballot* shall mean each of the voting forms that will be distributed by order of the Court to holders of Claims in Classes that are impaired and entitled to vote under the Plan.

2.6     *Bankruptcy Case* or *Case* shall mean the Chapter 11 bankruptcy case of the Debtor now pending before the Court.

2.7     *Bankruptcy Code* shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended and applicable to this Case.

2.8     *Bar Date* shall mean such date as set by order of the Bankruptcy Court as establishing the last date by which parties asserting claims against the Debtor may file timely claims against the Debtor.

2.9     *BEEHIVE Building* shall mean the Property.

2.10    *Business Day* shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Atlanta, Georgia.

2.11    *Cash* shall mean legal tender of the United States of America.

2.12    *Causes of Action* shall mean any and all of the Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions, and any claims acquired following the Petition  Date.

2.13    *Claim* shall mean a claim against the Debtor or its Estate, as defined in § 101(5) of the Bankruptcy Code.

2.14    *Claims Litigation* shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

2.15    *Class* shall mean any class into which Claims or Interests are classified pursuant to this Plan.

2.16 *Collateral* shall mean all Property subject to the Secured Claim of CML.

2.17    *Confirmation Date* shall mean the date on which the Confirmation Order is entered on the docket of the Court.

2.18    *Confirmation Hearing* shall mean the hearing on confirmation of the Plan, held pursuant to § 1128 of the Bankruptcy Code.

2.19    *Confirmation Order* shall mean the Order entered by the Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

2.20    *Court* or *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over this Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

2.21    *Debtor* shall mean Beehive Beauty School, LLC, a Georgia limited liability company.

2.22 *Designated Notice* means notice and an opportunity for a hearing as defined in §102(a) of the Bankruptcy Code, with notice limited to the Debtor, the United States Trustee, the parties directly affected by the relief sought of action to be taken, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the clerk of the Court and serve a copy of such notice on counsel to the Debtor.

2.23    *Disallowed Claim* shall mean (a) a Claim, or any portion thereof, that has been disallowed by a Final Order of the Court; (b) a Claim that has been listed in the Schedules at zero or unknown amount or as contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final

Order of the Court or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of claim has been timely filed or deemed timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable law.

2.24 *Disclosure Statement* means the disclosure statement, as amended, filed in connection with this Plan.

2.25   *Disputed Claim* shall mean a Claim as to which an objection has been or may be timely filed by a party-in-interest with standing and which objection has not been withdrawn or determined by a Final Order and which is not the subject of a compromise and settlement as described in this Plan.  Disputed Claims shall also include any Claim held by a creditor against which the Debtor has asserted a claim that has the effect, under §502(d) of the Bankruptcy Code, of precluding a Distribution with respect to such Claim.

2.26   *Distribution* shall mean a distribution or payment under the Plan to the holders of Allowed Claims.

2.27 *Distribution Date* shall mean shall mean any date that the Debtor makes payment pursuant to the terms of the Plan.

2.28   *Effective Date* shall mean the first Business Day occurring at least thirty (30) days after the Confirmation Date, provided that all of the conditions set forth in Article VIII of the Plan have been satisfied.

2.29   *Equity Interest* shall mean the equity interest in the Debtor, 100% of which is currently owned by Sandra Walden.

2.30   *Estate* shall mean the bankruptcy estate created by the commencement of the Debtor's Chapter 11 case.

2.31    *Final Order* shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

2.32    *Lender* means CML-GA BHBS, LLC (or its successors and assigns that is the lender under the Loan Documents) ("CML"), a judgment creditor under the Stipulated Judgment and the holder of a first priority lien on the Property.

2.33    *Loan Documents* means the (1) Forbearance Agreement dated April 1, 2012, by and among inter alia CML and Beehive; (2) the Promissory Note dated September 11, 2008, in the original principal amount of $1,500,000.00; (3) the Security Deed dated as of December 18, 2007, executed by Debtor in favor of Original Lender and recorded in Deed Book 2547, page 103, Newton County, Georgia records, as modified by that certain Modification of Security Deed dated February 14, 2008 and recorded in Deed Book 2570, page 236, aforesaid records, and as further modified by that certain Modification of Security Deed dated September 11, 2008 and recorded in Deed Book 2646, page 9; and (4) the Assignment of Rents dated December 18, 2007, executed by Debtor in favor of Original Lender and recorded in Deed Book 2547, page 114.

2.35    *Petition Date* shall mean April 6, 2015, the date on which the Debtor filed its Chapter 11 case.

2.36    *Plan* shall mean this Plan of Reorganization, as it may be modified or amended from time to time pursuant to § 1127 of the Bankruptcy Code and as provided for in this Plan.

2.37    *Property* shall mean that certain tract of real property owned by the Debtor located at 7207 Turner Lake Road, Covington, Georgia, otherwise known as BEEHIVE Building.

2.38    *Released Parties* shall have the meaning ascribed in Section 4.3 hereof.

2.39    *Reorganized Debtor* means the Debtor as of, and subsequent to, the Effective Date.

2.40    *SARE* shall be an abbreviation for "Single Asset Real Estate" case as defined under 11 U.S.C. §101 (51B) of the Bankruptcy Code.

2.41    *Scheduled* shall mean, with respect to any Claim, the status and amount, if any, of such Claim, as set forth in the Debtor's Schedules.

2.42    *Schedules* shall mean the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs filed on or about June 12, 2013 [Doc No. 16], as amended from time to time.

2.43    *Secured Claim* shall mean a Claim secured by a lien on property of the Estate to the extent of the value, as of the Effective Date, of such lien as determined by a Final Order of the Court pursuant to § 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Reorganized Debtor and the holder of such Claim.

2.44    *Statements* shall mean any related documents filed with the Schedules, including but not limited to amendments, resolutions, financial reports and budgets.

2.45    *Stipulated Judgment* shall mean that Joint Stipulation to Final Judgment entered on April 10, 2012 in *CML-GA BHBS, LLC V. Beehive Beauty School Limited Liability Company,* in the Superior Court of Newnan County, State of Georgia, Civil Action no. 2012-700-3, in the amount of $1,684,594.10.

2.46    *Tax Claim* shall mean any Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code or payable under § 1129(a)(9)(D) of the Bankruptcy Code.

2.47    *Unsecured Claim* shall mean a Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim or a Tax Claim.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    <u>Introduction</u>.

All Claims and Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

3.2    <u>Classification</u>.

Claims and Interests are classified as follows:

<u>Class 1</u>  -  Administrative Claims

<u>Class 2</u>  -  Tax Claims

<u>Class 3</u>  -  Secured Claims

<u>Class 4</u>  -  General Unsecured Claims

<u>Class 5</u>  -  Unsecured Claims of Equity Holders

<u>Class 6</u>  -  Claims of Equity Holders

## ARTICLE IV

## <u>DESCRIPTION, TREATMENT AND IMPAIRMENT OF CLAIMS AND INTERESTS</u>

The Classes of Claims and Interests, as well as their treatment and an analysis of whether they are impaired or unimpaired, are described as follows:

### <u>Class 1</u> - **Administrative Claims**

(1)      <u>Description and Treatment</u>:  Class 1 consists of all Administrative Claims. Except as may otherwise be agreed between the Reorganized Debtor and the holder of an Administrative Claim, the Reorganized Debtor will pay all Administrative Claims that are Allowed as of or after the Effective Date in full either on the Effective Date, as soon thereafter as is reasonably practicable, or as otherwise agreed to by the holder of the Allowed Administrative Claim and the Reorganized Debtor.

(2)      <u>Impairment</u>:  Class 1 is not impaired by the Plan.

### <u>Class 2</u> - **Tax Claims**

(1)      <u>Description and Treatment</u>:  Class 2 consists of all Tax Claims, including any Tax Claims held by Newton County, Georgia in the approximate amount of $11,000.00.  ("Allowed Tax Claims")  To the extent that any Allowed Tax Claims have not been satisfied prior to the Effective Date, the Reorganized Debtor will pay all remaining Allowed Tax Claims in full on the Effective Date or as soon thereafter as is reasonably practicable if sufficient funds are available.  Otherwise, the Reorganized Debtor will pay all Allowed Tax Claims over a period not to exceed five (5) years from the Petition Date in regular quarterly installment payments, including interest at an annual percentage rate of 5%; provided, however, that all Allowed Tax Claims shall be paid in full no later than the date all Allowed Unsecured Claims are paid in full.

(2) <u>Impairment</u>:  Class 2 is impaired by the Plan.

**Class 3** **- Secured Claims**

(1)      Description and Treatment:  Class 3 consists of the Secured Claim of CML in the

amount of $1,684,594.10 , which the Debtor agrees shall be CML's Allowed Claim ("CML's

Claim").  CML's Claim is secured by a first priority lien on the BEEHIVE Building, also referred

to as the Property.  The Debtor and CML agree that the value of the Property for purposes of the

Plan shall be $650,000.00, which shall be CML's Allowed Secured Claim.  The value of the

Property is less than the amount of CML's Claim, and, therefore, CML's Claim is partially

unsecured. Beginning on October 5, 2015 and on the first of each month thereafter, the Debtor

shall make monthly payments of interest only to CML in the amount of $10,000 per month for

twelve months.  On the first day of the thirteenth month, or at any time prior to the thirteenth

month, the Debtor shall make a balloon payment of $650,000.00 to satisfy CML's Claim in full.

So long as Debtor is not in default, if Debtor pays the balloon payment of $650,000 prior to the

thirteenth month then any interest installment payment of $10,000 per month, stated above, that

may have become due after the balloon payment of $650,000 is actually made, but before month

twelve (12) shall be considered waived by CML. During the pendency of this case, Debtor shall

pay all property taxes and insurance premiums as they are due and payable.

If Debtor fails to make a payment as required herein, or if there is a default as to the

payment of taxes and the maintenance of insurance as set forth herein, then it shall be considered

an Event of Default.  Upon an Event of Default, CML may send a notice of default to the Debtor

and Debtor's attorney and shall provide a ten (10) day cure period (the "Cure Period").  Upon the

expiration of the cure period and the failure by Debtor to cure its default, notwithstanding the

automatic stay provisions of Section 362 of the Bankruptcy Code, CML shall have the right to

accelerate the Debtor's obligations to CML, and to exercise all of Lender's rights and remedies

under the Loan Documents, the Plan, the Confirmation Order, at law and in equity, including, without limitation, the right to notice, advertise and to foreclose on the Collateral (including, without limitation, the Property) and to confirm the foreclosure sale.

For purposes of illustration, an Event of Default shall include, but shall not be limited to the following:

(1)  failing to timely make any of the required monthly payments under the Plan;

(2)  failing to timely pay real property taxes on the Property;

(3)  failing to timely pay for and to maintain general liability insurance on the Property;

(4)  failing to timely pay for and to maintain casualty insurance on the Property.

CML shall retain its lien and/or security interest in the Property, in order to secure the payments set forth in the Plan or the Reinstated Obligation, as the case may be.  The Post-Confirmation CML Lien shall continue in full force and effect and shall remain in existence until the earlier of the following dates:  (i) the date that Reorganized  Debtor pays CML all payments due hereunder, including (without limitation) the Balloon Payment, and Reorganized Debtor has not otherwise committed, and failed to cure within the Cure Period, an Event of Default; (ii) the date that the Reinstated Obligation is paid in full; or (iii) the date that CML voluntarily releases its lien and/or security interests in writing.  Except as expressly modified by the terms of this Plan, the terms and conditions of the Loan Documents (including, without limitation, Note(s) and Deeds to Secure Debt in favor of CML) shall survive confirmation.

In the event that Reorganized Debtor makes all payments as set forth herein, CML will not be entitled to an unsecured deficiency claim against Debtor or Reorganized Debtor.  In the event that Debtor or Reorganized Debtor commits an Event of Default, and such Event of Default has not been cured within the Cure Period, then the entire amount of CML's claim shall

be automatically and immediately reinstated in its entirety, less any payments made by Debtor or Reorganized Debtor to CML pursuant to this Plan, and the Reinstated Obligation shall be immediately due and payable to CML without acceleration.

Beehive previously filed for protection under Chapter 11 of the Bankruptcy Code and said bankruptcy was resolved by Forbearance Agreement between the parties, which included a Stipulation for stay relief in a subsequent bankruptcy filing in favor of CML.  Accordingly, as a material inducement to CML's acceptance of this Plan, Debtor and Reorganized Debtor both waive the right to contest, challenge, or in any way oppose, any motion, petition or other filing by CML seeking relief from: (i) the automatic stay under Section 362 of the Bankruptcy Code; or (ii) any injunction under Section 105 of the Bankruptcy Code or otherwise that may be applicable, in any subsequent bankruptcy case of Debtor or Reorganized Debtor.  After the Confirmation Order becomes a Final Order, Reorganized Debtor agrees to sign an acknowledgement of its agreement to the waivers provided for and agreed upon in this paragraph.

As a material inducement to CML's acceptance of this Plan, Debtor and Reorganized Debtor both agree and stipulate, and represent and warrant, that any subsequent bankruptcy filing by Debtor or Reorganized Debtor would be a bad faith bankruptcy filing as to CML and CML's Collateral.  After the Confirmation Order becomes a Final Order, Reorganized Debtor will sign an acknowledgment of the agreement and stipulations, and representations and warranties, set forth in this paragraph.

In addition to the CML first priority security interest, the United States Small Business Administration ("SBA") has a second priority lien on the Collateral and a claim in the amount of $327,543.00, which is wholly unsecured. There are no other known Secured Claims.

(2)     Impairment:  Class 3 is impaired by the Plan in that CML's Claim shall not be paid in full.

**Class 4  - General Unsecured Claims**

(1)     Description and Treatment:     Class 4 consists of all Unsecured Claims that are not included in any other Class.  Class 4 shall include the following debts

| | |
|---|---|
| AUTO OWNERS IN RIVERS INSURANCE | UNKNOWN |
| CAN CAPITAL | $25,000.00 |
| CHASE | $25,490.00 |
| CREDIT CONTROL LLC | $3,278.00 |
| DISCOVER | $15,727.00 |
| FRESH VIEW SOLUTIONS | UNKNOWN |
| IOU CENTRAL | $15,000.00 |
| MACYS | $3,070.00 |
| ON DECK | $20,000.00 |
| SEARS | $2,823.00 |
| SMALL BUSINESS ADMINISTRATION | $327,543.00 |
| LARRY WALDEN | $44,240.00 |

The Small Business Administration "SBA" Loan listed on Schedule D of the Debtor's schedules becomes a Class 4 General Unsecured debt in that based on the value of the BEEHIVE Building, the SBA's debt would be considered unsecured. The Class 4 Claims are undisputed and Debtor shall pay 1 cent (1%) percent of the Allowed Amount of such Claims, without interest, by the Reorganized Debtor at the time that CML is paid off in full to the extent that any monies remain or in a lesser amount if consented to by the said creditors.

(2)  <u>Impairment</u>:  Class 4 is impaired by the Plan.

### <u>Class 5 – Unsecured Claims of Insiders</u>

(1)  <u>Description and Treatment</u>:  Class 5 consists of the unsecured debts owed to insiders of Debtor.

SANDRA WALDEN                                                              $98,000.00

 The Class 5 Claims are undisputed and Debtor shall pay 0 cents (0%) percent of the Allowed Amount of such Claims, by the Reorganized Debtor at the time that CML is paid off in full Equity Interest in the Debtor.

(2)  <u>Impairment</u>:  Class 5 is impaired by the Plan.

### <u>Class 6 – Claims of Insiders</u>

(1) <u>Description and Treatment</u>:  The Equity Interest of Sandra Walden shall not be cancelled under the Plan.  Following the Effective Date, Sandra Walden, shall continue to hold a One Hundred (100%) percent interest in Debtor. No distributions or dividends will be paid from the Reorganized Debtor with respect to such equity interests unless or until such time as the Allowed Claims in Classes 1 through 5 have been paid in full.

(2) <u>Impairment</u>:  Class 6 is unimpaired by the Plan.  Holders of Interests are not entitled to vote to accept or reject the Plan and Class 6 is deemed to have accepted the Plan.

4.6  **<u>Provisions Relating to Class 1 Claims</u>**

 The Plan contains provisions that set forth the treatment of Claims of a kind specified in §§ 507(a)(2) through 507(a)(10) of the Bankruptcy Code.  Such treatment is consistent with the requirements of § 1129(a)(9) of the Bankruptcy Code, and the holders of such Claims are not entitled to vote on this Plan.  Notwithstanding any other provision of this Plan, pursuant to §§ 1123(a)(1) of the Bankruptcy Code, Claims under §§ 507(a)(2) through 507(a)(10) of the Bankruptcy Code are not

designated as classes of Claims for purposes of this Plan and all references in this Plan to Class 1

Claims are for organizational purposes and convenience of reference only.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     **Vesting of the Debtor's Assets in the Reorganized Debtor.**

All property of the Estate shall vest automatically in the Reorganized Debtor on the Effective

Date (without the necessity of executing any instruments of assignment), for the express purpose of

allowing the Reorganized Debtor to: (1) operate the business of the Debtor; (2) pursue litigation and

Causes of Action of the Debtor; (3) complete or attempt to complete a sale of the Property and (4)

make Distributions to holders of Claims pursuant to the terms and conditions of the Plan. As of the

Effective Date, all property of the Estate shall be free and clear of all liens, Claims and Interests,

except as specifically provided in the Plan or Confirmation Order.

5.2     **Operations of the Reorganized Debtor**

The Reorganized Debtor shall have the rights, powers and duties as set forth in the Plan and

shall be responsible for administering the Plan under the terms and subject to the conditions set forth

herein.  After the Effective Date, the Reorganized Debtor, through its Manager, Sandra Walden, shall

be authorized to take the necessary and appropriate actions to continue operations of the Reorganized

Debtor pending the payment of all Distributions required under the Plan, including the right to retain

or engage such employees, professional persons and agents as are appropriate or desirable to

5.3     **Pay-off of the Property.**

The Reorganized Debtor shall have the authority and responsibility to pursue the refinance

and pay-off of CML's first lien on the Property. Debtor shall pursue such refinancing with finance

companies who are willing and capable of providing such funds in amount and terms as may be necessary to satisfy the Reorganized Debtors' obligations under the Plan.

5.4    **Distributions.**

The Reorganized Debtor will make all Distributions as required under the Plan as funds become reasonably available, The Reorganized Debtor will have responsibility for determining pro rata Distributions (as necessary) and sending such out Distributions to the appropriate holders of Allowed Claims. The Reorganized Debtor will continue to make Distributions from time to time to holders of Allowed Claims in accordance with the terms of the Plan until the provisions of the Plan have been satisfied.

5.5    **Disputed Claims.**

Notwithstanding any other provisions of this Plan, no payments or other Distribution of any kind will be made on account of any Claim until such Claim becomes an Allowed Claim and then only to the extent that such Claim is an Allowed Claim. To the extent a Disputed Claim becomes an Allowed Claim after any partial Distribution has been made on other Allowed Claims in the same Class, a Distribution in an equal percentage shall be made in respect of such Allowed Claim within 30 days after such claim becomes an Allowed Claim. Notwithstanding the foregoing, any holder of both an Allowed Claim(s) and a Disputed Claim(s) shall receive the appropriate payment or Distribution on the Allowed Claim(s), although, except as otherwise agreed by the Reorganized Debtor in its sole discretion, no payment or distribution shall be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order. Should any Disputed Claim not be asserted in a liquidated amount which can be used for purposes of making any interim Distribution, the Reorganized Debtor may hold a prudent amount for such Claim or may request the Court to estimate the amount of the Claim, either for purposes of allowance or for purposes of determining a maximum

amount of such Claim so as to enable the Reorganized Debtor to proceed with the interim Distribution.

5.6    **Claims Administration**.

The Court shall enter an Order establishing a Bar Date by which all proofs of claim are required to be filed.  Either prior to or subsequent to the Effective Date, the Debtor or the Reorganized Debtor will complete the process of reviewing the filed proofs of claim and determining whether the proof of claim comports with the amount the Debtor acknowledges to be due and owing and is otherwise valid, permissible, and payable under the Bankruptcy Code and applicable state law. The Debtor or the Reorganized Debtor shall complete its review of the Claims and shall initiate, file and prosecute any and all actions as it deems necessary and appropriate to dispute, disallow, object to or otherwise quantify the Claims against the Estate no later than ninety (90) days after the Confirmation Date, unless ordered otherwise by the Court.  EXCEPT AS OTHERWISE PROVIDED HEREIN AS TO CML'S ALLOWED CLAIM AND CML'S ALLOWED SECURED CLAIM, **THE FAILURE TO OBJECT TO ANY CLAIM PRIOR TO THE COMMENCEMENT OF THE HEARING ON CONFIRMATION OF THE PLAN SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO OBJECT THEREAFTER TO SUCH CLAIM IN WHOLE OR IN PART FOR THE PURPOSE OF DISTRIBUTION.**

5.7    **Pursuit of Litigation Claims and Avoidance Actions.**

As of the Effective Date, the Reorganized Debtor shall have full, exclusive and complete authority, on behalf of the Debtor and the Estate, to pursue and prosecute the Estate's causes of action and Avoidance Actions upon an assessment of the net benefit expected to be received by the Estate in connection therewith (taking into account the costs and expenses projected to be incurred in connection therewith, the likelihood of success on the merits, and the range of potential recoveries to

be received by the Estate).  **ALL CAUSES OF ACTION SHALL SURVIVE CONFIRMATION, AND THE ASSERTION OF SUCH CLAIMS SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE OR OTHERWISE.**

5.8     **Compromise of Litigation and Disputed Claims**.

The Reorganized Debtor shall have the authority to compromise, settle and resolve any Disputed Claims or Causes of Action, including Avoidance Actions, upon such terms and conditions as the Reorganized Debtor deems appropriate and in the best interests of the Estate.   The Reorganized Debtor shall provide at least 20 days' notice to all parties-in-interest in the Bankruptcy Case of any compromise of an amount in excess of $50,000, with such notice to provide a reasonable explanation of the proposed compromise, including any amount to be received or paid by the Reorganized Debtor.

The Reorganized Debtor shall not be obligated to obtain Court approval in connection with any such compromise unless a party-in-interest files an objection to such proposed compromise within the 20-day notice period.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

6.1     **Classes Entitled to Vote**.

Each impaired Class shall be entitled to vote to accept or reject the Plan.  A vote in favor of the Plan by an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, shall not count as an accepting impaired Class for purposes of § 1129(a)(10).  Class 6 is deemed to have accepted the Plan and is not entitled to vote on the Plan.  Each unimpaired Class of Claims shall be deemed to have accepted the Plan, and shall not be entitled to vote to accept or reject the Plan.

6.2     **Class Acceptance Requirement.**

Under § 1126(c) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who have voted on the Plan have voted to accept the Plan.

**6.3**    **Cramdown.**

The Debtor hereby requests confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code with respect to any impaired Class that votes to reject the Plan. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the Allowed Claims in any Class that votes against the Plan consistent with § 1129(b)(2) of the Bankruptcy Code.

**6.4**    **Claim Designation**.

The Debtor reserves the right to seek to designate, pursuant to § 1126(e) of the Bankruptcy Code, any Claimholder whose vote on the Plan was submitted for an improper purpose or was otherwise not submitted in good faith.

<h1 style="text-align:center">ARTICLE VII</h1>

<h2 style="text-align:center"><u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u></h2>

**7.1**    **Assumption or Rejection of Contracts and Leases**.

To the extent that, as of the Confirmation Date, the Debtor has any remaining executory contracts or unexpired leases that have not been previously assumed or rejected, then all such remaining executory contracts or unexpired leases shall be deemed rejected as of the Effective Date, provided, however, that no contracts entered into after the Petition Date and approved by the Court will be deemed rejected, unless specifically set forth in the Plan or in an order confirming the Plan.

**7.2**    **Rejection Damages**.

If the Debtor rejects an executory contract or unexpired lease pursuant to the Plan and such rejection results in a Claim that has not theretofore been evidenced by a timely filed proof of claim or

a proof of claim that is deemed to be timely filed under applicable law, then any person seeking to assert such a Claim shall file with the Court, and serve upon the Debtor, a proof of claim within thirty (30) days from the Effective Date.  Any person seeking to assert such a Claim who fails to file a proof of claim within this thirty (30) day period shall be deemed to have waived said Claim, and it shall be forever barred.

## ARTICLE VIII

## **CONDITIONS PRECEDENT**

Each of the following conditions must occur and be satisfied on or before the Effective Date for the Plan to be effective on the Effective Date (provided that the Debtor may agree to waive any one or more of the following conditions):

(1)  The Confirmation Order shall have been signed by the Court and duly entered on the docket of the Debtor's case by the Clerk of the Court in a form and substance reasonably acceptable to the Debtor; and

(2)  Either the Confirmation Order shall have become a Final Order or there shall not be any stay in effect with respect to the Confirmation Order and the Confirmation Order shall not have been vacated, reversed, modified or amended in any material respects without the prior written consent of the Debtor.

## ARTICLE IX

## **MODIFICATIONS AND AMENDMENTS**

The Debtor reserves the right to alter, amend or modify the Plan as contemplated by § 1127 of the Bankruptcy Code.  The Plan may be modified, before or after Confirmation, without notice or hearing, or on such notice and hearing as the Court deems appropriate, if the Court finds that the

proposed modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard to the proposed modification. Without limiting the foregoing, the Plan otherwise may be modified after notice and hearing.  In the event of any modification at or before Confirmation, any votes in favor of the Plan shall be deemed to be votes in favor of the Plan as modified, unless the Court finds that the proposed modification materially and adversely affects the rights of the parties-in-interest that cast said votes.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction**.

After the Confirmation Date, the Court shall retain exclusive jurisdiction over the Reorganized Debtor until the case is closed, for the following purposes:

(1) to hear and determine any and all pending or future proceedings regarding the allowance, disallowance or subordination of Claims or rights of recoupment and/or setoff;

(2) to consider and act on the compromise and settlement of any Claim against the Debtor, or any cause of action asserted on behalf of the Debtor; provided, however, that there shall be no requirement that the Reorganized Debtor seek Court approval of compromises and settlements except as provided herein;

(3) to hear and determine all pending or future controversies, suits and disputes that may arise under the Plan, including controversies arising in connection with the interpretation or construction of the Plan or any documents intended to implement the provisions of the Plan;

(4) to hear and determine any and all applications of professional persons for the allowance of compensation and reimbursement of expenses incurred prior to or on the Confirmation Date;

(5) to hear and determine any and all pending applications or motions for rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, if necessary, and to fix the allowance of, any and all Claims arising from the rejection of executory contracts and unexpired leases pursuant to the Plan or otherwise;

(6) to consider and rule upon any proposed modifications of the Plan;

(7) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or in any order of the Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(8) to determine such other matters that may be provided for in the Confirmation Order or other orders of the Court, all as authorized under the provisions of the Bankruptcy Code or any other applicable law;

(9) to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

(10) to hear and determine all applications, adversary proceedings, disputes, controversies and contested matters arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Bankruptcy Case, including matters related to any claim or cause of action to be pursued for the benefit of the Estate, whether such claim or action is filed prior to or after the Confirmation Date;

(11) to hear and determine disputes and controversies regarding title to property of the Estate or the Debtor;

(12) to issue such orders as may be necessary or appropriate in aid of Confirmation, and to facilitate consummation of the Plan, including orders requiring parties to fulfill their obligations as specified in the Plan; and

(13) to consider and act upon any claim or cause of action by or against the Debtor or the Reorganized Debtor, or their respective agents, attorneys, financial advisers or representatives, arising under or in connection with the Bankruptcy Case or the Plan.

## ARTICLE XI

## <u>INJUNCTION</u>

Except as specifically provided in the Plan and the Confirmation Order, the Confirmation Order shall, on the Effective Date, operate as an injunction against any act against the Estate, the assets of the Estate, the Reorganization Proceeds, and the Reorganized Debtor, to initiate, prosecute, enforce, liquidate, collect or otherwise assert any Claim against the Estate, the assets of the Estate, the Reorganization Proceeds, and the Reorganized Debtor, except as provided in this Plan.  Any act taken in violation of this Article XI shall be null and void.  On and after the Confirmation Date, the provisions of the Plan shall be binding upon the Debtor, the Estate, all

holders of Claims, all holders of Interests and all other parties in interest in the Bankruptcy Case, in each case whether or not such entities are impaired and whether or not such entities have accepted the Plan.

## ARTICLE XII

## LIMITATION OF LIABILITY

Neither the Debtor or the Reorganized Debtor, nor any of their respective shareholders, members, directors, officers, employees, agents, advisors, managers, attorneys or financial advisers, shall have or incur any liability to any holder of a Claim or Interest or any other party in interest, for any act or omission in connection with, relating to or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Estate and the distribution of property under the Plan, except for their gross negligence or willful misconduct, and in all respects they shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing herein shall be construed, however, to relieve the Reorganized Debtor, or any party, from performing their respective obligations under the Plan.

## ARTICLE XIII

## MISCELLANEOUS

13.1    **Binding Effect.**

The Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, the holders of Claims, the holders of Interests and their respective successors and assigns.

13.2    **Notices**.

Any notice required or permitted to be provided to the Debtor or the Reorganized Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

Beehive Beauty School, LLC
Attn:  Sandra Walden Manager
7207 Turner Lake Road
Covington, GA 30014

*with copies to:*

Evan M. Altman, Esq.,
8325 Dunwoody Place
Building Two
Atlanta, GA 30350

Notice shall be effective three (3) days after mailing or one (1) day after sending by overnight courier.

13.3    **Governing Law.**

Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and the Bankruptcy Rules, the laws of the State of Georgia shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

13.4    **Amendment to the Debtor's Organizational Documents**.

As of the Effective Date, the Debtor's organizational documents shall be deemed amended to include a provision that prohibits the issuance of nonvoting equity securities to the extent required by § 1123(a)(6) of the Bankruptcy Code.

13.5    **Designated Notice**.

Notwithstanding any other provision of this Plan, when notice and a hearing is required with

regard to any action to be taken by the Reorganized Debtor, Designated Notice shall be adequate.

Respectfully submitted, this 31st day of August, 2015.

BEEHIVE BEAUTY SCHOOL, LLC

By: /s/ Sandra Walden
    Sandra Walden
    Manager of Beehive Beauty School, LLC

/s/ Evan M. Altman
Evan M. Altman, Esq.,
Attorney for Debtor
Georgia Bar No., 014066
8325 Dunwoody Place
Building Two
Atlanta, GA 30350

## CERTIFICATE OF SERVICE

I, Evan M. Altman. certify that I am over 18 years of age and that on April 17, 2015, I served

a copy of the foregoing Plan of Reorganization via first class U.S. Mail with adequate postage

prepaid, unless indicated otherwise on the following persons or entities at the addresses states

VIA Email David.S.Weidenbaum@usdoj.gov

David Weidenbaum, Esq.,
Office of United States Trustee
362 Richard B. Russell Building
75 Spring Street
Atlanta, GA  30303

VIA Email kristen.yadlosky@hartmansimons.com
          sam.arden@hartmansimons.com

Samuel Arden, Esq.,
Kristen Yadlosky, Esq.,
Hartman, Simons & Wood LLP
6400 Powers Ferry Road, NW
Suite 400
Atlanta, GA 30339

This 31st day of August, 2015.

/s/ Evan M. Altman
 Evan M. Altman
 Attorney for Movant/ Debtor BEEHIVE
 Georgia Bar No. 014066

Northridge 400
325 Dunwoody Place
Building Two
Atlanta, Georgia  30350
(770) 394-6466